The next case is Upstate Jobs Party v. Kosinski. Good morning, Your Honors, and may it please the Court. Sarah Rosenbluth for the Commissioners of the New York State Board of Elections. By definition, independent bodies in New York are not political parties, and this lawsuit does not challenge the validity of the line drawn between the two, a line that this Court upheld less than a year ago in Libertarian Party of New York v. State Board of Elections. Plaintiffs instead attempt to achieve through the back door, but they have not achieved through the front door, for it is undisputed that the Upstate Jobs Party has never attained party status in New York. Plaintiffs nonetheless claim an entitlement to the campaign finance benefits of party status without any of its burden. But because plaintiffs do not argue that the threshold for attaining party status is too high, an argument that is foreclosed under this circuit's precedent, the fundamental question before this Court is simply whether a state may permissibly subject entities to different treatment when they fall on either side of a validly drawn line. The answer to that question is yes, and plaintiffs' argument to the contrary misrepresents New York law. Their use of the term minor party to refer to UJT inaccurately suggests that the law differentiates between major parties on the one hand and minor parties on the other. It does not. There is no such thing as a minor party under New York law. Instead, the election law adopts one rule for parties and one rule for candidates. Plaintiffs' claims also depend on a totally... To the extent those different rules implicate speech, though, you do have to justify them. Sure, and that brings me to my next point, which is that with regard to the First Amendment, plaintiffs' claims depend on a totally novel and unsupported legal premise. The idea that unequal treatment in and of itself is a First Amendment harm without any demonstrated impact on one's ability to engage in political speech. Neither this Court nor the Supreme Court has ever so held. And accepting this novel theory would lead to an end run around candidate contribution limits and would mean that anyone who secures an independent nomination, which in many cases requires collecting no more than a few hundred signatures, that person would be entitled to collect contributions up to the party limit, which can be, in some smaller places, over a hundred times the candidate limit. I understand from your briefs the argument you discussed for a valid reason to place contribution limits. You've explained in your briefs how that affects both the actual and appearance of corruption. I'm not so clear on why you think if the contribution limit is valid, why you also need a transfer limit for independent bodies. Well, it's not that... The main point is that political parties are allowed to engage in these transfers and the ability to transfer is an artifact of party status. And that is sort of derived from... I'm not sure I understand why you would limit anybody's transfers. I mean, it's not that party status somehow supports the transfer limit. So, as I said, I understand your argument for contribution limits on these independent bodies. What is the legitimate state interest in limiting transfers as well as contributions? Right. So, I think it's really the same, and I'll get to that in just one moment, but I also just want to make the point that when we say we're limiting transfers, it's not that parties cannot make any contributions to their candidates. They could up to... To the extent that an individual can. Sure. If I understand it correctly, there's no limit on the transfer a party can make. That's right. That's right. And so the state interest there is really very closely related to the state interest in limiting contributions. It is that same anti-corruption... If you can limit contributions to an independent body so that you can't give more than the same amount you give for a candidate, so for them to have a million dollars, they're going to have to have a fair number of contributors. At that point, what's the problem with limitless transfers? Again, it's less of a problem with limitless transfers and more that the transfer is an artifact of what the party does. What does that mean in terms of the First Amendment? First of all... I understand that the upstate jobs party is challenging all aspects of the law, but if we were to uphold the contributions limit, why do we need a transfer limit? Because they only have a few candidates. One year they had two candidates. They got contributions from 25 people in the limited amount. Why can't they give all of that to the two candidates? Well, I agree that the first priority is upholding the contribution limit, but even in that case, you do still have an issue where... I think the problem becomes more... Let me take a step back. It's still the same problem of a limited donor base and a limited number of candidates that are fielded in any given election. In this record, we see that there's really only two known contributors to UJP, and so there's still the same problem with that very concentrated, non-diluted network of contributors who are essentially funneling their money to really just a small handful or maybe even one person. So I think the anti-corruption interest is still present. And really, I think plaintiffs aren't really separately challenging the transfer limit. I don't see in their brief any sort of separate articulation of why the transfer limits are independently problematic. But again, I think this still comes back to the fundamental problem we articulate in our brief, which is that there's no theory of First Amendment harm here, which is that... And the case law has recognized this cap theory and the penalty theory. And so we don't really even get to analyzing the state's interest unless we find that the First Amendment interests have been implicated. And plaintiffs are not arguing that the contribution limits are too low, and they've explicitly disavowed that theory, and nor does the law assess any penalty on contributing to an independent body as opposed to a political party. So... I don't want to use all your time, but one further question on the housekeeping account. Can these accounts be used for issue advocacy? So can the housekeeping accounts be used to state the party's interests on any number of issues? In a general sense, yes. Or is it limited to buying staples and paperclips? I mean, certainly it can be used for staples and paperclips. But yes, yes. So a party can collect any amount of money from a donor as long as it uses it to buy ads on, you know, election reform, budget issues, guns, whatever. And it can then fund in any amount but not an independent body. So a party can use housekeeping funds on issue advocacy that is not really dependent on whether it's allocable to any candidate. And so I think this is a bit of a gray area, but it... If a person gets $100,000 and you mark this to the housekeeping account, the party can then use it for a $100,000 ad on whatever subject. But that cannot be done by an independent body. Yes, with a slight modification. And the modification is that independent bodies do have... So that's generally correct, yes. And housekeeping can be used for issue-based advocacy that is not related to any candidate, generally speaking. However, independent bodies have an ability to raise and spend unlimited funds, even if it is related to issue advocacy, as long as it's not related to a specific vote or candidate. So the campaign finance law is not triggered at all by general issue-based advocacy or organization or fundraising drives, door-to-door efforts, so on and so forth. If a state job party is committed to advocating for a certain view of economic revitalization, let's say, it can do that. It can raise any amount from a person. Yes, yes. Why is there a limit then on housekeeping accounts with the state? Well, housekeeping is tied to an election. And so that is when the... Because a housekeeping account is used in connection with an election, with a vote, the issue-based advocacy that an independent body can do is more general and not tied to an election, so that does not trigger the same anti-corruption interest. I'm sorry. You have parties set up housekeeping accounts for particular elections? No, no. They're just a general sort of account. That's what I thought. Yes. But you're now saying that the independent body can't have a housekeeping account because the housekeeping account is tied to an election. Did I misunderstand you? It's tied to electoral advocacy. So let me clarify. The campaign finance rules are triggered by any activity done in connection with a vote or a given election. So as long as you're organizing in connection with an election, then you are subject to the campaign finance rules, and you are subject to the limits on housekeeping and contribution limits. But a party... The distinction I'm making is general issue-based advocacy that says, you know, vote yes on Prop 1, for example, that's connected to a vote, and that's within the framework of the campaign finance laws versus just advocating for a general policy view. The corruption problem is I can give $100,000 to a party to say I support that proposition, but I can't give $100,000 to an independent body that will support that proposition. What's the state interest there? I mean, it's still the state interest in limiting the flow of funds from a small, very small handful of individuals to a very small handful of recipients. And in that same... You only have that interest if there's a corruption problem. Right, but an independent... ...in preventing people from speaking as powerfully as they can, and money is one of the factors that can make them speak powerfully. That, indeed, you'll let them do it. You'll let them do it if they speak through a party. So I would refer this court's attention to the Vermont Right to Life case, where it did identify this distinction between independent expenditures and contributions. And generally, it is true that there is no anti-corruption interest in limiting contributions to groups that make only independent expenditures that comes from Citizens United, and then this court's follow-on case in New York's Progress and Protection Act. However, Vermont Right to Life recognized that it is permissible to impose this restriction as a means of preventing corruption when the group that makes independent expenditures is financially and organizationally enmeshed with a group that also makes the rest contributions to candidates. And here, it's not even a case of the enmeshing of two different organizations. It's the entire... It's the same group that wishes to do both. And, you know, we cite the example in our brief of a large donation to a housekeeping account that is ostensibly in support of a sort of general issue-based message. But if it inures to the benefit of one candidate because they're only fielding one candidate, then that's where the corruption concern comes in because you don't have that diluted network of contributors, and you have a much greater ability for one contributor to exercise leverage over the candidate. And so the fundamental problem is when you have a non-diversified base of donors and a non-diversified base of candidates. And so there's just a much easier ability to trace back the money to an individual contributor. And that's what the Supreme Court recognized in McCutcheon. The fact that they all... that they're non-diversified doesn't raise the quid pro quo problem. It certainly does raise the... Or am I not seeing that? Because if there's the ability for one person to effectively bankroll one other person's campaign, that has been recognized, you know, as a very enduring proposition of campaign finance law, that that does raise an appearance of corruption. And so because one may favor that single individual's interest, but the more people who are contributing, the more they represent a public interest rather than a selfish one. So I'm not sure I see the corruption problem if you can get contributions from 1,000 people. Well, that's exactly the point, that there is a much lesser corruption problem if you have contributions from 1,000 people. But in the context of an independent body, the record is that that is not the case. Here we only have two known... Not if we oppose the contribution limit. None of them would be able to give more than the limit. Sure, but you're still... Again, in order to reach the question of the state's interest in the housekeeping and regulating the housekeeping account, you first have to find that it does implicate a First Amendment interest. And here, it is true their argument is that the... I don't know how you don't think all of this implicates First Amendment interest. The Supreme Court has tolerated limits on contributions because of the corruption concern, but that starts with the first saying that this is at the very heart of the First Amendment interest. I don't know how you say you don't have First Amendment interest with all of this legislation. Well, so the reason why any contribution limit has ever been struck down, and really there's only ever been one contribution limit, a plain contribution limit that's been struck down in Randall v. Sorrell, is too low. And the idea there was that it was so low as to prevent a candidate... I understand that you can have contribution limits, but you were arguing, you've said it repeatedly this morning, that you have to first have a First Amendment interest. My question to you is, isn't there always a First Amendment interest? But that's my point. The case law establishes two recognized ways, a series of First Amendment harm. One is that it's preventing... The limit, whatever limit it is, is too low because it limits your... It prevents you from amassing the resources necessary for effective advocacy, or we have the penalty theory on the other side. You're saying that there isn't a First Amendment interest in comparing two different groups and saying they're similarly situated, they're fielding candidates in the same campaign, and you should assess the limits placed on one versus the other. Sorry, the question is... I'm sorry, can you repeat the question? So you're saying there's no First Amendment interest. Your adversary is essentially saying the First Amendment interest partakes of a... what we would generally think of as an equal protection interest, but you can look at the disparities between how parties are treated and how these independent bodies are treated and say, this tells us, this is evidence that the speech of one group is being disadvantaged vis-a-vis the other. Is that not a First Amendment... That's not a First Amendment claim, and I would point this towards attention to the D.C. Circuit's case in Wagner, which does recognize that this equal protection theory has never been used to strike down a contribution limit on First Amendment grounds, and really even on equal protection grounds either. And just to return to Judge Raji's point, I guess I want to be clear that whether a contribution limit is too low is a factual question about whether it prevents candidates from amassing the resources necessary for effective advocacy. And in Randall, that was the only case where it did strike down a limit as too low. There was a factual record about the resources that were needed to mount an effective challenger campaign. And so when I say that the First Amendment isn't implicated here, it's because there hasn't been a factual showing that this housekeeping limit is preventing them from amassing the resources necessary for effective advocacy. They do have contribution... They have a regular contribution limit. They are able to engage in issue-based advocacy as a general matter outside of any election. And... What does that mean? If an election is coming up in 2020, what are they limited from doing with respect to issue advocacy? Well, they can't endorse a candidate and they can't coordinate with a candidate and really take action on behalf of a candidate. But if they're interested in simply... What do you mean? I thought they could have candidates. No, of course. Of course. I just mean in terms of the permissible activities that they can do outside the scope of the campaign finance laws. Okay. They're still able to organize in the community and sort of raise their public profile through events and through... I mean, they say in their statement of fact that they host speaker series. So things like that, that sort of is an issue-based sort of organizational effort. How do they raise money for issues if they can't raise it through housekeeping accounts and they can't raise it through individual contributions? Well, if it is simply for issues and it's not in connection with any vote or candidate or election, then they are unlimited in their ability to raise those funds. Because that is... There's no trigger to the campaign finance laws. And... I just want to briefly touch on Plaintiff Babinec's personal First Amendment claim. This claim also failed as a matter of law. The Supreme Court held in Buckley that contribution limits impose only a marginal restriction on an individual contributor's First Amendment rights since the individual remains free to discuss candidates and issues, including through independent expenditures. Here, not only is Babinec free to spend money on independent expenditures, but he has already done so to the tune of at least $265,000. And that, you know, is another answer to the question is that there is this ability to spend money through the update jobs committee that the plaintiffs have formed as long as they're not coordinating with the candidates. So that is still a permissible avenue as well. And plaintiffs here are wrong that the contribution limit, as applied to Babinec, discriminates among speakers. As a sort of... Counsel, I'm sorry. Can I just back you up for a second? And really, I suppose to go back to the contribution limits for the independent bodies. I guess one of the questions I have is whether there's any evidence that the state would point to indicating that independent bodies, or minor parties, if you want to call them that, are somehow more likely to suffer from corruption than major parties. Because it seems like that is an implicit assumption to justify the different contribution limits. Is that something that's based entirely on some sort of logical assumption that the state is making, or is there actual evidence? Because if one is simply trying to reason as to what one imagines to be likely or not, I guess the logic is, well, they're smaller, they're more likely to be easily dominated by a single contributor, and therefore more likely to be subject to corruption. But couldn't one equally logically assume, well, they're minor parties, they're less likely to have any success, they're less likely to get anybody voted into office, so if you're going to corruptly invest money in trying to get somebody elected, well, you know, you're going to go to the major parties. Because why would someone corruptly invest in something that's going to be a big loser? So, I guess my question is, if we're just basing it on assumptions, where does that leave us? Don't we need some sort of evidence of how this plays out in the real world? And if so, so I guess there's two questions. Number one, is there evidence? What about the other? And number two, is the state relying simply on what it believes to be So the evidence that is in the record is the deposition testimony of our expert Brian Quayle, who is an official at the State Board of Elections, who does testify that, in his experience, the vast majority of quote-unquote independent bodies are merely alter egos of an independent candidate. So when you run for office as an independent, there's basically a line on the nominating petition that a body has to nominate you. And so that sort of ballot label is merely a candidate's alter ego. And so at page 80, or so, 80 to 82, I think, of the record, we do have that deposition testimony as to the majority of independent bodies in the experience of Mr. Quayle. And so, and because this is a facial challenge, in order... Can I just ask you to clarify that? If a body is an alter ego, and let's say it's self-funding, I guess, how does that indicate corruption? Well, it just means that the body isn't, is really an alter ego for one candidate. So it really isn't... Oh, I understand that. So, for example, if I were to self-fund myself, I think it would be an odd characterization to consider that I've corrupted myself, or that I'm, I don't know what, bribing myself so that I'll take positions in the future. I'm trying to understand what the nature is. Can you be more specific about what the corrupt nature is? Yeah, yeah. Right. If I'm your sugar daddy and I fund you, right, I'm a powerful railroad baron, I'm gonna get you elected to office, and then you know you're gonna take over all the cattle ranches and build graveyards where I want. I get that. Is there evidence of that with respect to minor bodies? So the evidence is, like I said, Mr. Quayle's testimony, but just to kind of play out how this generally works in practice, is that in a relatively small race, where the contribution limit would be approximately $1,000 per candidate, it's tied to the number of registered voters in a jurisdiction, and the party limit now is $138,000. And so if you wanted to raise $138,000 and you got the benefit of the party limit, you could obtain that amount of money from one person. On the other hand, if you were subject to the candidate limit, you would have to solicit that money from at least 100 or 150 people, assuming they all maxed out. So that's just sort of the real world example of how any old person who runs for office on an independent ballot and declares himself to be an independent body, thereby taking advantage of the political party limit, and therefore only has to get a contribution from one person in order to reach $138,000 versus $150,000. So it is that same concern that I've been articulating about how the corruption concern is mitigated when you do have a large, diversified network of contributors and any one person is less able to raise the appearance of corruption because it's not the case that one person is bankrolling the entire candidacy. And because it is a facial challenge here, in order for plaintiffs to prevail, it has to be the case that these limits are unconstitutional as applied in all circumstances, so even as to these undisputedly alter-ego bodies. And the testimony is that the majority of these bodies are essentially alter-egos, so they are the small. That's the testimony, yes. Yes. And so it is true that there are some bodies that are larger, that are more complex, but that's only a hint. It does break down substantially when you get to the lesser parties that used to be parties under New York law, I understand it. I mean, those are pretty diversified and the corruption concern becomes much more difficult. But that's my point, is that because it is a facial challenge, it has to be unconstitutional, even as applied to these smaller alter-egos. And in McCutcheon, the court sort of elucidated this concept of closely drawn, and closely drawn scrutiny, and the test that was articulated was that it has to be a reason, it's really kind of an idea of a reasonable fit. It's not the single best disposition, but a reasonable one that's in proportion to the interest served. And I think drawing that line, so even assuming that the legislature purported to classify between parties and independent bodies, which we dispute, even assuming it did that, then drawing a line at party status is I think a reasonable proxy to achieve what I've been articulating, which is that diversified network of contributors. And again, the party status is something that already exists in campaign finance law, and so it's reasonable to kind of use that as sort of that foundational building block. And again, this court has recently affirmed the validity of the thresholds for obtaining party status. And so it just boils down to, can the state then distinguish between entities that fall on either side of that indisputably valid line? So that's the fundamental question here. And I think just the last point that I wanted to raise regarding plaintiff's fab in that is that plaintiffs are wrong in that the contribution limit as applied to him discriminates among speakers. As this court observed in Koren, in rejecting a similar argument, the contribution limit is not speaker-based. It applies equally to all potential donors and discriminates only based on the donor's choice of recipient, not the donor's own identity. Unless there are further questions, I hopefully can still have a couple minutes for rebuttal. Thank you. Good morning, Your Honor. Sean Sheehy on behalf of the Plaintiff-Appellees Cross Appellants. May it please the court. Your Honor, first I would respectfully request two minutes of rebuttal time since we are here on a cross appeal. Why don't we take that up at the conclusion of the argument. We may end up addressing everything and not need the time. That would be fine. Thank you very much, Your Honor. Imagine if after serving as Governor of New York and President of the United States, the Bull Moose Party nominated Theodore Roosevelt to serve as Governor of New York. Under current New York election law, the Bull Moose Party would be compelled to compete on an unequal playing field complete with asymmetric contribution limits. The Bull Moose Party would be banned from establishing a housekeeping account to pay salaries of employees and hire the best talent and to pay for office space. While the New York State Republican Party could raise unlimited funds for the same. The Bull Moose Party would be capped at the amount of money that it could contribute to Theodore Roosevelt. While the New York State Republican Party could contribute unlimited amounts of funds to its candidate. And lastly... Are you seeking just to have the ability to solicit contributions of $117,300 the way a party can? Or are you saying that any campaign contribution limit is inappropriate? Your Honor, we are seeking the ability to raise, to solicit contributions at the same amount as parties. Alright, so right now you're limited to $47,100 and you want to be able to solicit $117,300. I just want to be sure I understand the record correctly. Yes, Your Honor, but as the State pointed out recently in their 28J letter, the contribution amounts have been altered such that now it's $18,000 for independent bodies and $138,000 for parties. So the disparity has now greatly increased and made the competition for votes more difficult. So it's not so that you want to be able to have a single contributor give you a million dollars? That's correct. We want to be able to solicit broadly contributions at the same amount as parties, whether that be the $138,000 or whether that be to solicit contributions to a housekeeping account at any amount. And the problem is, is currently as written, we are at risk of soliciting contributions that are prohibited, which under New York law is a criminal offense. So we have, of course, abstained from doing so. When we were here last before this court, this court recognized that we raised serious questions to the constitutionality of these challenge statutes and said that more record development was required to show that these statutes were closely drawn. And the district court was correct when it said no evidence of actual corruption involving independent bodies was shown. And that is an important finding. We see in FEC v. Ted Cruz that the fact that there was no evidence at all adduced for the repayment of personal loans to candidates was a big fact in determining that the repayment of personal loan limit was unconstitutional in part because 30 states did not regulate the repayment of personal loans. Here, multiple states don't treat independent bodies or minor parties any differently for contribution limit purposes. And the state has adduced no evidence of actual corruption involving independent bodies or minor parties. So other states do treat parties differently though, right? They don't, not to my knowledge, your honor, that they treat them differently for contribution limit purposes. They do treat minor parties and I think this is a point I'd like to address here is that what is unique about this case and what is novel is that New York is trying to use its ballot access laws to calibrate the amount of money that minor parties are able to raise and spend in an election. And that is unconstitutional. Davis v. FEC at the Supreme Court, Riddle v. Hickenlooper at the Tenth Circuit all ruled that asymmetrical contribution limits for candidates competing against each other in the same election is unconstitutional and anathema to the First Amendment. And here, the way the statutes are written is that independent bodies and parties share one important thing in common and that is in every election they are competing for votes. Parties are competing to maintain their party status while independent bodies are competing to obtain party status. And being compelled to compete at contribution limits substantially lower than parties puts our client at a competitive disadvantage. And this is why we have chosen to bring this case on an equal protection challenge and why I say Wagner v. FEC is unconstitutional, or Wagner v. FEC is distinguishable. Here, the issue is that at the outset the First Amendment allows for contribution limits but they have to be justified. Any contribution limit infringes upon the First Amendment right. But the next step that what New York does here is that then they selectively infringe that right against independent bodies without evidence of actual corruption, without evidence of the appearance of corruption. And it's that selective infringement in the middle of a competition for votes that makes this an equal protection violation. I think they would say the appearance, let's talk about the appearance of corruption first. They would say the fact that the great majority of these independent bodies are small and that you could imagine a single donor essentially controlling the show just situates them differently than diverse and larger bodies. And it may get close to the line that this is a reason when you get up to the Green Party but the record supports this as an anti-corruption measure directed at appearances. Thank you, Your Honor. So the Supreme Court in McCutcheon defined what type of evidence we're looking for when it comes to the appearance of corruption. And the evidence that we're looking for is evidence of the public's awareness of opportunities to abuse the system of contribution limits. The Supreme Court and this court has then defined what type of evidence must be adduced to satisfy the appearance of corruption interest. You have in Agne Bene v. Parks and you have in Nixon v. Shrinkpack of Missouri referenda are powerful, powerful evidence that the public is aware of abuse in the system of contribution limits. Then in Agne Bene v. Parks, you had studies, studies over decades, particularly from New York University that showed how the public perceived contributions from government contractors to New York City government officials as people perceiving that to be corrupting. And lastly, you have public campaign finance reports and analysis of those reports which show that contributions from government contractors amounted to 3.8% and 5.2% of the total number of contributors but amounted to 25% of the total amount contributed. And most of those contributions went to incumbents. That was evidence of an appearance of corruption that New York City acted upon and this court said was sufficient for showing the appearance of corruption. We don't have any of that type of evidence in this record. First, there's no evidence of actual corruption but when it comes to the appearance of corruption, Dr. Wilcox's report only discusses whether or not lobbyist contributions should be stopped because the public thinks that lobbyists have influence or access. That is legally, as a matter of law, deficient and this court rejected similar evidence in Green Party of Connecticut v. Garfield and it should reject Dr. Wilcox's report for similar reasons here. I want to be sure I understand your position with respect to what I understand to be the state's position which is that because of the nature of these independent bodies, they may have one candidate, two candidates, so someone who contributes to them in an amount larger than the $47,000 or now the $18,000 is effectively being able to make a contribution more than someone could make within even the party and that's the concern. Why is that not an apt way to look at it or not a way that justifies the statute? Forgive me, Your Honor. The scenario is... Normally you only give $47,000 to the candidate, right? Yes, for a statewide candidate. If there's no limit on what you can give through an independent body or if the limit is $130,000, they're only going to have one candidate. You have effectively enabled yourself to give three times what the campaign contribution limit would be by channeling your money through that independent body rather than giving it directly to the candidate. I think that's part of the state's argument for why they're entitled to do this. I'd like to know your position on that. Thank you, Your Honor, and I understand the question. So, Your Honor, there is no evidence in the record of that actually occurring. Mr. Quayle's affidavit did not do the analysis that was done in Agne Bene where he studied public campaign finance reports to see if independent bodies were being already used in this way. That's how they would be used as soon as the limit goes to $137,000, which is all you're asking for here. Correct, Your Honor, and I understand that. My point is that currently there's no study of the public campaign finance records to suggest that contributors are sort of double-dipping by contributing the maximum amount to the candidate, $47,000, and then contributing to the independent body by supporting the candidate for an additional $47,000. That could be evidence of an appearance of corruption, but we don't have that type of evidence to support what is an illusory and divorced-from-reality opinion by Mr. Quayle in his affidavit. It's divorced from reality because a contributor would not go through the risk of trying to go through the petitioning process where the parties get to go first and circulate petitions first, and then the independent bodies go second, but people can't sign more than one petition, so there's this shrinking pool problem that this court recognized in Lerman. So the fact of the matter is it's already exceptionally difficult for a candidate to get on the ballot in the first place, and I don't think the reasonable contributor that we see in McCutcheon in the Supreme Court use would take the time and effort to do an independent body and try to redirect a large amount of contributions to that independent body candidate when instead they could just establish an independent expenditure committee to support that candidate's cause and not risk the candidate never even making it on the ballot in the first place. Your Honor, I would like to address the issue, and I think we have addressed it. The question came about that in the record, typically independent bodies are altered egos of the candidate, and I think Judge Nardini's question goes right to this point, which is in Davis v. FEC, the court ruled that you can't say that it's corrupting and therefore have asymmetrical contribution limits when a candidate contributes money to his own campaign, makes a loan to his own campaign. If all this is is an alter ego of the candidate, then the candidate would just be simply loaning money to its campaign, and that has already been ruled as not corrupting under Davis v. FEC. So there's no evidence about the alter ego status being actually corrupting or creating an appearance of corruption. Lastly, Your Honor, I would like to touch upon, if I may, and I know I'm out of time, I request the ability to address the housekeeping account provision. This court recognized in New York Progress and Protection Act that independent expenditure committees could raise unlimited funds for independent expenditures, and regardless, without any regard for how many contributors there are to the independent expenditure committee. That is because there is simply no quo and no quid. No money in an independent expenditure committee is flowing to the candidate. Again, housekeeping accounts are even further removed than independent expenditure committees, and that is because with housekeeping account funds, you can't make independent expenditures. You are, by the statute's language itself, not allowed to expressly advocate the election of any candidate, and even more so, you can't do anything that would be allocable to a candidate. So this is even further removed and can't trigger the anti-corruption interest of the state, and it is injuring Upstate Jobs Party's First Amendment and equal protection rights because they can't raise funds needed to pay to hire staff, to have office space, or, as is shown in the record, they are trying to support issues and try to develop the party's message, but they can't raise unlimited funds for this because in each election, they are trying to get candidates on the ballot and in front of the voters to be elected. So does this mean that if you want to have an office and rent an office space, you have to take the money out of the money that's been contributed generally to the organization? That's correct, Your Honor. We would have to use sort of the terminology, sort of funds that are already limited by statute are the limited contributions that come in. We have to use those funds, then, to pay for staff and to pay for office space, while our competitors for votes in every election are able to raise unlimited funds for the same thing, and I think it's important to note that includes paying for staff and attracting talent to try to develop the best message going forward for the party. Did I understand you to say, though, that you're not subject to a limit on what you can raise for issue advocacy? Your Honor, this is a new issue that's coming up today. I think the danger with issue advocacy is where is that line when it comes to being allocable to a candidate? No, I understand that. That's what I'm asking about it, but is that the law as it now stands that if you want to ask to raise money to take a position on the New York budget, people could give you a million dollars? Yes, Your Honor. I think so long as nothing is allocable to a candidate, so I would think the concern would be is if a candidate's name is perhaps mentioned in an ad, I would be concerned that the New York State Board of Elections... Or if a candidate is speaking repeatedly on the issue, one would readily link more general issue advocacy to that candidate. I mean, people have talked about that for several election cycles now. Yes, Your Honor, yes. But on that, you are not limited. It's how much you can raise, how much you can take from any one individual. Correct, Your Honor. If we were able to raise unlimited funds for a housekeeping account, we could use that money for speech to promote the party's message, yes. I'm not being clear. I'm sorry. I thought you were saying there were three categories here. How much you can solicit to the organization generally that you can then give to a candidate. That's what's now $18,000. Am I understanding correctly? You can raise $18,000 from individuals to contribute to the upstate jobs party. And I thought that covered both what you did for a candidate and any issue positions you took. I didn't think you could say to somebody, okay, give us $18,000. We're going to earmark that for a gubernatorial candidate. But give us a million dollars. We're going to take a position on the budget. That's not right, is it? No, Your Honor. It's not right that the upstate jobs party could raise a million dollars to its candidate limited fund and use that money for issue advocacy. And by that, I mean they couldn't raise a million dollars to be put in their sort of party account that's used for candidates. That would have to be limited by statute. Can somebody give you more than $18,000 for any reason? No, Your Honor. So to a party, they can't give them any more than 130,000, whatever the new number is, for any reason, right? They could give $138,000 to a party to its account that would be used to give money to candidates. Right, but they are also allowed to have a separate housekeeping account. That is correct. Yes, Your Honor. Yes. And you could do issue advocacy through an independent expenditure committee? The $1 million for issue advocacy, if your party wanted to engage in that, what mechanism would it use? We could not use the independent expenditure committee, Your Honor, because that is only for expressly advocating the election or defeat of a candidate. I see. So what would be, when your adversary was referring to issue advocacy, what is the mechanism for that? Your Honor, we would have to use just our limited funds that are contributed to us from the $18,000, the most amount that an individual could contribute, because otherwise we are not allowed to set up a housekeeping account. And because the Upstate Jobs Party is continually trying to put candidates on the ballot, the concern is that if we start raising funds for anything that looks like a housekeeping account, we risk criminal penalties. If the panel doesn't have any additional questions for me, I will briefly close. The First Amendment and the 14th Amendment have never recognized asymmetrical contribution limits between candidates, or in this case, parties who are competing for votes in the same election. And I ask the court to affirm the district court's ruling as to the contribution limits, and I ask this court to reverse the lower court's ruling on housekeeping. Can I ask one? I know you've closed, but can I ask one other question? Of course, Your Honor. Please. My colleague started with the difference between contribution and transfer payments in questioning your adversary. Could you address whether you see them? Just from the briefing, you see them essentially as the same, but maybe you would want to expand on that a little. Yes, Your Honor. So the underpinnings of contributions where you have to show evidence of corruption or its appearance, we see that as the same standard that these contribution limits must be judged by. And so that is the reason why we were arguing that these contribution limits are not in any way justified as either quid pro quo, actual corruption, or apparent corruption, and also they are not closely drawn. There's no evidence to show that these contribution limits do not unnecessarily abridge First Amendment rights, and that is the standard. And with the housekeeping account, you have Green Party v. Connecticut, Green Party v. Garfield, where the ban, the complete ban on lobbyist contributions was ruled to not be closely drawn because there was no evidence of actual or apparent corruption. And because of that, a ban, the most draconian way to regulate campaign finance, was not closely drawn, and any concerns about lobbyist contributions could be limited with a contribution limit. My concern is more practical, so let me pursue it with you. Thank you, Your Honor. I understand you're arguing that you should not be subject to a campaign contribution limit different from what parties are, but if for any reason we were not persuaded by that, and your party were limited to $18,000 a contributor, and you had 10 contributors, so you raised $180,000. As I understand it, the transfer limit prevents you from giving more than $47,000 to any one candidate. Is that right? To any statewide candidate. Yes, Your Honor. Whereas the party, whether it raises that amount or several multiples of it, can give without limit to a candidate. And I'm asking you whether there is a separate and different reason for us to look at the transfer limitation whatever we decide about the contribution limitation. Do you want to speak to that? Yes, Your Honor, because there I think we're talking about the party, again, competing for votes in every election, and they're competing for votes with their candidate. So the fact that the parties and independent bodies are not able to support their candidate to the same degree as parties, again, puts them at a competitive disadvantage in each and every election. So, yes, in that sense, it is a separate harm to the Upstate Jobs Party that they're not able to support their candidates who's getting votes in the election. That Upstate Jobs Party, in its effort to become a party, puts them at a competitive disadvantage. Thank you very much, Your Honor. Thank you. Hello. So I would like to make four main points in rebuttal, if I may. First, I just sort of want to clarify perhaps some of the confusion that's arisen regarding the issue advocacy and whatnot. So just to clarify, there's three main buckets of sort of campaign finance regulated spending that's at issue here. One is the contribution limit, one is the transfer limit, and one is the housekeeping account. When I'm talking about the sort of extra campaign finance spending, that is sort of general, sort of organizational building, exercises, and spending that's connected with a particular potentially platform but that is taking place without connection to any vote or upcoming election or candidate. So this campaign finance buzz would not be triggered in that instance. So that's sort of what... It wouldn't be triggered for the party? They could raise without limit? For what? For, and I take their point that this is not really what they're trying to do, but it does remain the case that if they're not fielding candidates and if they're just trying to build their organizational profile and raise their public visibility, then there's unlimited, they're unlimited in their ability to raise and spend funds. But if they field a candidate, what can they do with respect to issue advocacy? Well, the Upstate Jobs Committee, which is the independent expenditure committee, also is unlimited in its ability to raise and spend funds, and Plaintiff's Babinette is a common member of both entities here. But they can't, the committee cannot endorse a candidate? No, it can endorse, it can take a position with respect to the support or defeat of a candidate, it just can't coordinate with a candidate, meaning it can't give directly to a candidate, it can't, it's not, there's supposed to be like a strict firewall really between the entities, they're not supposed to make decisions together because then it starts to look like they're actually giving money to the candidate. So that's just sort of the first point I want to make to hopefully try to address that. I would ask about the state's corruption interest. I mean, it would seem very plausible then that an entity would create such a committee and say, okay, we're going to give lots of money to you and you do all the negative advertising, you do all the issue advertising on hot-button issues like abortion, guns, voting rights, et cetera, and however you take, however, whatever position you're taking, it will be supportive of, you'll echo our candidate. Well, the party cannot do that because that would be coordinating. There's not allowed to be coordination between a candidate and an independent expenditure committee. Now, it is true after Citizens United that the state has no cognizable corruption interest in regulating independent expenditures, but it is equally true that it has an abiding interest in regulating contributions. And again, it is also true that New York Progress and Protection Act says that Citizens United requires the conclusion that just as there is no corruption interest in regulating independent expenditures, neither can there be a corruption interest in regulating contributions to groups that make only independent expenditures. However... How much corruption can someone affect with $137,000 contribution? Well, certainly in a small race where the... You're not going to elect anybody with $137,000 contribution. You know that. But that's the... Well, so first of all, in a small race, they're not very expensive to run, and you have a candidate limit that would be approximately $1,000. And so if you only need to raise... No, no, but the party can raise $137,000, right? Yes. Okay. So what is the corruption concern at that level of money? I understand what the argument would be if we were talking about a million dollars, maybe even $500,000 limit... Because in smaller races where it might only take $138,000 to run a race for county legislature in Allegheny County, if one person can raise all he needs to run the entirety of his race from one person, that creates a very real appearance of corruption and that one person is... But then you have a concern about whether this is reasonably tailored to your needs. This limit isn't on only certain races. This limit applies if it's a gubernatorial race. That's right. How can you justify that? Well, that goes back to what I was saying earlier, which is the closely drawn test is one of reasonable fit. And it is our position that it is reasonable to select as that line a party status, and it's reasonable for the state to... It's reasonable to limit someone to $18,000 for a senatorial race, a gubernatorial race. Is that what you're saying? I'm saying that it's reasonable to believe that party status is a reasonable proxy for a large and diversified contributor base and also a large and diversified slate of candidates. Is that standard? You only have to demonstrate that it's reasonable? Yes, McCutcheon said that it has to be a reasonable fit. And this court... Well, part of the question of a reasonable fit is how much of a problem of corruption is there at that dollar amount, isn't it? Well, that's exactly my point. This really sort of cashes out, I think, most in the smaller races where the races are much less expensive to run in the first instance, and an independent body would then be able to... The mantle of an independent body would then be able to collect contributions... It sounds like you're conceding that you don't have a justification for it at statewide races. No, it's possible that that's a closer case. Not at statewide races, but in the context of a larger, more complex organization. For example, an organization that was recently a party and no longer is. It might be a closer question as to that organization, but because this is a facial challenge, you have to look at whether it is unconstitutional in all applications. And I think our justification is at its peak as to the alter ego candidacies. And so I just want to make a couple quick points, if I can. One is that as to the contribution limit, we are talking about a plain, vanilla contribution limit. The statute in question simply regulates the amount of money a party can take in. There is no case that has been cited in this briefing, and I am aware of none, where a court has struck down a contribution limit for any reason other than it prevented a candidate from amassing the resources necessary for effective advocacy. Not because there was no evidence, not because it was asymmetrical. And on this evidence point, I just think that this is a very curious claim here. What plaintiffs are complaining about is really the absence of statutory authorization for an independent body to collect at a certain limit. Really, the absence of any reference whatsoever in the campaign finance law to independent bodies. And so it's just very peculiar to expect affirmative evidence of such an absence. As we document in our response brief, the legislature undertook to regulate political parties. It found a problem of corruption in political parties. Because it had been the case, there was unlimited contributions to the political parties. And the legislature, the governor convened this commission on government integrity, and that commission produced exhaustive work documenting the problem of corruption with political parties. Now, of course, I'm constrained to concede that there is no mention in those documents of independent bodies, because it was not purporting to regulate independent bodies. And so my adversary has cited this Ognebendi case from this court from 2011. I believe that case actually supports us, because that was a contribution limit. And that actually was an asymmetrical limit where it applied, differentiated based on contributor rather than recipient. And individuals who were doing business in the city of New York were subject to a lower contribution limit. And actually, the appellants in that case, the plaintiffs in that case, made a very similar argument to the one my adversary is making today regarding the evidence. And this court specifically said, we reject the proposition that any heightened evidentiary standard applies here. And that is, again, the case here. There's just... This is not what the Supreme Court has called a prophylaxis upon prophylaxis rule, a sort of unusual kind of innovation in campaign finance law. This is a plain vanilla contribution limit. And the idea that large contributions can raise actual or apparent corruption is one of the oldest principles in the book, even after the Citizens United case. And finally, my last point, it's just regarding the Davis case and its principle of asymmetry. I just don't think Davis has any application here at all, nor does this concept of asymmetry. We do it as a penalty case. We do. And this court has also viewed it as a penalty case, I believe, in the Green Party case where it characterized Davis in that manner. And the problem is sort of... In Davis, there was an apples-to-apples problem where literal candidates in the same race were subject... The candidates themselves were subject to different limits based on whether his opponent was self-funding or not or one of the candidates was self-funding or not. Here, we have a situation where if Mr. Babinetz, who is the founder of Upstate Jobs Party, decided to run for state senate against a Republican and Democratic opponent, all three individuals would be subject to the same candidate contribution limits. So when you apply that same apples-to-apples principle here, it absolutely passes Davis. Same thing in Riddle. Excuse me, that was a case where Democratic and Republican candidates were entitled under Colorado law to higher contribution limits than were write-in candidates. And so that was a problem there. Again, the same apples-to-apples problem that is absent here. But that's only part of the picture. Those three people running for office would be subject to the same individual contribution limits but not to the same limits by the entities that support them. The Republican Party could give, without limitation to its candidate, the Democratic Party could do the same but not the Upstate Jobs Party. That is true, but that is permissible under Colorado Republican and also Randall v. Sorrell where the Supreme Court has time and again recognized the important and legitimate role for political parties in American elections. And that is a fundamental feature of campaign finance law in New York State and at the federal level. I think I heard my adversary say that no other state does this. And I don't think that's right. My understanding is the majority rule is to allow parties to receive higher amounts of money and so does federal law. And so accepting plaintiffs' fear here would actually call into question the federal campaign finance law. I'm sorry, could you just clarify that? You just said allows political parties to receive higher amounts of money. Higher amounts than what, than the candidate? Yes. Or higher amounts than other independent bodies that are not designated by the state as, quote, political parties. No, it's just a, I mean, I would say that the federal law mirrors the New York scheme where it has one rule for parties and one rule for candidates. I think federal law basically diverts... No, no, I know, but I think the question on the table is not whether you're treating contribution limits differently for candidates as opposed to the body supporting them. The question on the table is are there other states or federal examples that differentiate with respect to contribution limits subject to the body, whatever you want to call them, the entities that are supporting the candidates. And I think that's the question. Yeah, so my understanding of federal law is that it basically, the question of whether a party is entitled to the party limit is sort of a question of state law as to whether it classifies, qualifies as a party under state law. But that just sort of goes back to my original point, which is that it really comes, plaintiffs are basically sort of complaining effectively, and I think I also heard them say that it's very hard to become a party. But this court has upheld that threshold of becoming a party. And so if you accept the premise that it is permissible and constitutional to allow parties to collect more money, in recognition of their fundamental role in American democracy, then it has to be that as long as they fall on one side of that line, they are entitled to. I'm not sure you're entitled on the theory of democracy to favor the established political parties. I mean, democracy is also fostered by smaller groups. Of course. I thought your argument was corruption. No, it is. But my point... So you're arguing that you're entitled to have these more restrictive limits on an independent party because you're serving some democratic principle? My point is that when it comes to the equal protection claim, those two entities are not similarly situated for that reason. But I think that's the problem here. That's a totally novel theory that has no support in the case law. You can have an equal protection violation without the disparity being with respect to a fundamental right. Here they're arguing that there's disparity in connection with a fundamental right. This jurisprudence that talks about that, how that gets a different equal protection analysis than if you're just saying that you were... Or a different standard of review anyway than if you're just claiming that you didn't get hired for a job or something like that within the government. Well, two points. One is, as the D.C. Circuit in Wagner points out, and I think this still holds true, is that no court has ever struck down contribution limits. And certainly the Supreme Court hasn't, nor has this court, on the basis of equal protection principles. But has this court ever considered the question of disparate contribution limits for associational entities? I understand they've upheld it for individuals giving to candidates and individuals giving to parties. But now we're talking about two different kinds of associations. Those that are recognized by state laws parties and those that are not. Is there any case law that says that you can have different campaign contribution limits in those circumstances? There is. So I think the focus that we have is Randall versus Sorrell, which struck down Vermont's contribution limits for an independent reason, which is that it had too great an impact on a political party's ability to do the fundamental work of a political party. In my view, it's not the party that's being protected. It's the First Amendment speech. You tell me if you think this is different. And to the extent you've got a legitimate reason why you would impose a different limit on an entity, an association, than you would a formally recognized party, I'm prepared to hear it. But part of the problem here is that you didn't develop a record that shows why you should. But the idea is that these groups are fundamentally different from one another. In a way that affects corruption? Yes, because the majority of independent bodies are merely alter egos. We don't have a very extensive record. And that gets us to the question I asked you before about at $137,000 or at a million dollars? Well, yeah, at $137,000. And that gets us to maybe for a very local election, but not for governor. Well, no. I mean, I think even for a governor, you could... This fact is still the same, that you just have a... The limited record in this case is that the majority of independent bodies are alter egos of their candidates. And that the donor-based independent bodies are categorically smaller. That is the evidence in this case. It's not very well-developed, but that's the main point. And just finally... So you asked what case suggests that you can treat these entities differently. And I think the point is that no case holds that this unequal treatment is itself a First Amendment harm. And until we have guidance from the Supreme Court to that effect, it's hard for... For a case that supports plaintiff's theory here. And between the Wagner case that says that this is a totally uncharted territory and the idea that we have a line that has been drawn, a valid line, then it follows that blue state can treat people differently on either side of a valid line. And you also have to show that you're similarly situated in order to even trigger this unequal protection analysis. To the extent that you're appealing from a grant of summary judgment to your adversary, do you want to go to trial below or do you want us to direct the district court to a summary judgment in your favor? The latter. That's what I thought. I just wanted to be sure. Yes. Okay. We'll hear from you, if you wish to give a rebuttal. Very briefly, Your Honor. There's no evidence in the record that the parties are in fact funneling, sending, making transfers of money to these small local races. There's no evidence in the record that that's happening and there's nothing in the record to suggest that it is happening with independent bodies. There is the line about whether or not... Do you want us to infer, therefore, that they're not contributing to local races? No, Your Honor. Your entity did not support local races. That's correct. Okay. That's correct. Importantly, to achieve party status, Your Honor, they have to win a certain number of votes in the gubernatorial election and in the presidential election. Those are the races that are most important for the Upstate Jobs Party in their effort to try to become a party and achieve party status. The Equal Protection Clause has been used to strike down contribution limits. We see this in Riddle v. Hickenlooper where the candidates had different contribution limits for major parties and minor parties. The court struck that down on Equal Protection grounds, finding it not closely drawn because there was no evidence that the minor parties were in fact more corrupting than the major parties. In this circuit, Green Party v. Garfield also struck down a contribution limit on the basis of lack of evidence, and that was the contribution ban on lobbyists. And lastly, this court recognized in Green Party of New York v. Walsh, independent bodies are more colloquially what we refer to as minor political parties. So this court has already recognized the role of independent bodies as minor parties. Unless the court has any further questions for me, I thank the court for its time today. Thank you. Thank you both. We will take the matter under advisement.